THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BTL INDUSTRIES, INC.**, | |
| Plaintiff, | |
| v. | Civil Action No. 25-6916 |
| **BEREJUVED INC., JANE SODOL, and LEV ZAK.** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**COMPLAINT**

Plaintiff BTL Industries, Inc. ("**Plaintiff**" or "**BTL**"), by its attorneys, for its Complaint against BeRejuved Inc., d/b/a BeRejuved Medical Spa & Wellness Studio ("**BeRejuved**"), Jane Sodol, and Lev Zak (collectively, "**Defendants**"), alleges as follows:

**NATURE OF THIS ACTION**

1.      This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; Defendants' trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); Defendants' trademark infringement and unfair competition under the New York General Business Law, NY GBL § 349, and the common law of the State of New York.

2.      BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the

1

technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.      BTL and its affiliates further expanded the reach of high-intensity, focused electromagnetic (HIFEM) technology into the field of intimate wellness. After receiving clearance from the U.S. Food and Drug Administration in December 2016, BTL introduced the EMSELLA® chair, a non-invasive device that delivers HIFEM energy to provoke supramaximal contractions of the pelvic-floor muscles and thereby treat male and female urinary incontinence. BTL safeguards the EMSELLA® device, and the proprietary technology it embodies, with a portfolio of patents, and federally registered trademarks.

4.      BTL and its affiliates continue to pioneer the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In September 2022, BTL launched EMFACE® aesthetic facial-contouring device. Like the EMSELLA® device, BTL protects the EMFACE® device—and the technology used in the device—with numerous patents and federally registered trademarks.

5.      Defendants promote and sell services in the United States using certain body- and face-contouring devices/procedures that they call "EMSculpting," "EMS Chair," and "EMS Non-Surgical Lift Face." On information and belief, Defendants have and continue to infringe BTL's patents directed to body- and face-contouring devices and methods by offering, selling, and performing body- and facial-contouring services using these devices. On information and belief, Defendants advertise these body- and facial-contouring services by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in their promotional and informational materials for these body- and face-contouring services.

6.     Defendants' infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' devices are not FDA cleared. Defendants' use of HIFEM®, and the confusingly similar EMSCULPTING and EMS is confusingly similar to BTL's EMSCULPT® and EM® marks, which mislead consumers into believing that Defendants' devices and body- and face-contouring services are associated and/or otherwise affiliated with BTL.

7.     BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents and federally registered trademarks, as well as to protect unknowing consumers from purchasing body- and face-contouring services performed by devices that are not FDA cleared.

8.     Defendants willful and continuing trademark infringement, unfair competition, and patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## PARTIES

9.     BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

10.    On information and belief, BeRejuved is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 363 7th Avenue, Suite 11R, New York, NY 10001, and its Principal Executive Office Address at 306 Gold Street, Suite 30C, Brooklyn, NY, 11201.

11.    On information and belief, Jane Sodol is an individual and director, principal, and/or owner of BeRejuved, who regularly conducts business in this District.

12.     On information and belief, Lev Zak is an individual and director, principal, and/or owner of BeRejuved, who regularly conducts business in this District.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

14.     Subject-matter jurisdiction for the trademark and unfair competition claims exists with respect to the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

15.     This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

16.     This Court has personal jurisdiction over BeRejuved because, on information and belief, it is a New York corporation and has its principal place of business in this District.

17.     This Court has personal jurisdiction over Defendant Jane Sodol because, on information and belief, Dr. Sodol is an owner and moving, conscious force behind Defendant BeRejuved's actions causing injury in this District and has purposefully established minimum contacts with this District.

18.     This Court has personal jurisdiction over Defendant Lev Zak because, on information and belief, Dr. Zak is an owner and moving, conscious force behind Defendant BeRejuved's actions causing injury in this District and has purposefully established minimum contacts with this District.

19.     This Court has supplemental jurisdiction over BTL's claims arising under the laws of New York, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to

BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

20.     Further, the acts complained of herein occurred in New York.

21.     Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

(a)     Defendants have purposefully established "minimum contacts" with the State of New York and this District; and

(b)     the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

22.     Therefore, this Court has specific and general jurisdiction over Defendants.

23.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants regularly conduct business in and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## BACKGROUND

24.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

25.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* **Exhibit A** (BTL Press Release). BTL's patent-protected EMSCULPT® device uses high-intensity electromagnetic

energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT® applicators, tailoring each type of applicator to a specific target area.



26.     The EMSCULPT® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/emsculpt-neo/.

27.     In June 2018, BTL received clearance from the FDA for its EMSCULPT® device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and for strengthening, toning, and firming of the buttocks and thighs. *See Id.* In October 2018, BTL

received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the EMSCULPT® device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening, toning, and firming of the buttocks, thighs, and calves, as well as improvement of muscle tone and firmness for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

28.     BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT® devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

29.     BTL's EMSCULPT® device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

30.     The aesthetic industry has recognized BTL's innovation, hailing it as having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused, electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." **Exhibit A**.

31.     In October 2017, BTL began commercial shipments of the EMSELLA® device (shown below), a standalone non-invasive, body-contouring device. *See* **Exhibit A**. BTL's patent-protected EMSELLA® device uses high-intensity electromagnetic energy to induce powerful

muscle contractions in a patient. BTL has developed and specifically configured EMSELLA® to target the pelvic area.



32.    The EMSELLA® device uses innovative and patent-protected protocols for therapies. BTL's proprietary protocols create repetitive pelvic floor muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/btl-emsella/.

33.    In December 2016, BTL received clearance from the FDA for its EMSELLA® device and began to sell the device in the United States for urinary-incontinence rehabilitation and pelvic-floor muscle strengthening.

34.    In September 2022, BTL released the EMFACE® device (shown below), a standalone non-invasive, aesthetic facial-contouring device. *See* **Exhibit B** (BTL EMFACE Press Release). BTL's patent-protected EMFACE® device applies a combination of synchronized

radiofrequency and high-intensity facial electromagnetic stimulation (HIFES®). Synchronized radiofrequency heats the dermis to stimulate collagen and elastin production, while HIFES® selectively contracts facial muscles.

35.    BTL has developed specifically configured EMFACE® flexible applicators, tailoring each type of applicator to a specific target area. https://bodybybtl.com/solutions/emface/.



36.    The EMFACE® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create heat and repetitive muscle contractions that result in a non-invasive method of toning muscle and face sculpting. https://bodybybtl.com/solutions/emface/.

37.    In March 2022, BTL received clearance from the FDA for its EMFACE® device and began to sell the device in the United States for the improvement of facial toning and reduction of wrinkles. *See Id.*

38.     BTL markets and distributes its non-invasive aesthetic facial-contouring EMFACE® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMFACE® devices that incorporate its proprietary technology, muscle toning protocols, and flexible applicators in the United States.

39.     BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT®, on its website at www.btlnet.com/patents.

A.     **The Asserted Patents**

40.     On May 2, 2017, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 9,636,519 (the "**'519 Patent**"), entitled "Magnetic Stimulation Methods and Devices for Therapeutic Treatments" to BTL Holdings Limited. A true and correct copy of the '519 Patent is attached hereto as **Exhibit C**. The '519 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '519 Patent, including equitable relief and damages.

41.     On November 19, 2019, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 10,478,634 (the "**'634 Patent**"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 Patent is attached hereto as **Exhibit D**. The '634 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

42.     On June 20, 2023, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,679,255 (the "**'255 Patent**"), entitled "Device and Method for Unattended Treatment of a Patient" to BTL Medical Technologies A.S. A true and correct copy of the '255 Patent is attached hereto as **Exhibit E**. The '255 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '255 Patent, including equitable relief and damages.

43.     On January 23, 2024, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,878,167 (the "**'167 Patent**"), entitled "Device and Method for Unattended Treatment of a Patient" to BTL Medical Technologies A.S. A true and correct copy of the '167 Patent is attached hereto as **Exhibit F**. The '167 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '167 Patent, including equitable relief and damages.

**B.**     **BTL's Trademarks**

44.     BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States including the following federally registered marks (the "BTL Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|----------|------|-----------|----------------------------------------|------------------|
| 7,063,232 | **EMFACE** | May 23, 2023 | Sept. 27, 2022 | Class 44: Medical services; medical services, namely, medical spa services featuring minimally and non-invasive cosmetic therapies |
| 6,891,006 | **EMFACE** | Nov. 1, 2022 | Apr. 4, 2022 | Class 10: Medical apparatus generating electromagnetic, magnetic, electrical, radiofrequency or thermal energy for use in skin |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, tightening of skin, reduction of wrinkles, reduction of scars, rejuvenation of skin, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; therapeutic facial masks; facial toning machines for cosmetic use; medical apparatus particularly apparatus for pain management, elimination of muscle spasms |
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | June 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |
| 5,915,636 | **EM** | Nov. 19, 2019 | Jan. 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,206,098 | EM | Nov. 24, 2020 | July 2018 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.

Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,373,947 | **EMSCULPT NEO** | June 1, 2021 | Oct. 17, 2020 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment of sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | cosmetic and plastic surgery; beauty salons; liposuction services; medical services, namely, removal of body cellulite. |
| 5,688,620 | **EMSELLA** | Mar. 5, 2019 | | Class 10: Medical and aesthetic apparatus and instruments, in particular non-invasive medical, aesthetic and surgical apparatus and instruments generating electrical, magnetic, electromagnetic, mechanical or thermal therapeutic energy used to stimulate gynecological and urological muscles and to increase strength and physical performance of gynecological and urological muscles for health, medical, and aesthetic purposes; medical, aesthetic and surgical apparatus and instruments for use in medical, surgical and aesthetic medicine procedures, namely, body shaping, fat removal, circumference reduction of waist, leg, arm, chest, neck, back, buttock, thigh, breast, saddlebags, and abdomen, tightening of skin, cellulite reduction, skin rejuvenation, wrinkle reduction, scar reduction, reduction of stretchmarks; Massage apparatus for use in lymphatic drainage and to increase circulation of body fluids; electric stimulation and magnetic stimulation apparatus for physical therapy purposes |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological medical, aesthetic and surgical apparatus and instruments for examining and treating reproductive organs, bladder, rectum; Body rehabilitation apparatus for medical purposes; Physical therapy equipment, namely, medical ultrasound apparatus, electrotherapy devices for providing transcutaneous electrical nerve stimulation, laser therapy stimulators, magnet therapy stimulators, high-frequency heat therapy apparatus, microwave therapy apparatus, traction therapy apparatus for medical purposes, shockwave therapy apparatus, electromagnetic therapy apparatus, hydrotherapy apparatus, and heat therapy apparatus; Physiotherapy and rehabilitation equipment, namely, medical ultrasound apparatus, electrotherapy devices for providing transcutaneous electrical nerve stimulation, laser therapy stimulators, magnet therapy stimulators, high-frequency heat therapy apparatus, microwave therapy apparatus, traction therapy apparatus for medical purposes, shockwave therapy apparatus, electromagnetic therapy |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | apparatus, hydrotherapy apparatus, and heat therapy apparatus; beds specially made for medical purposes; Contraceptive apparatus; Artificial limbs; Suture materials; all the aforementioned goods not in connection with cardiologic and cardiovascular treatment apparatus, including body fluid movement pumps, enablers or enhancers of any kind<br><br>Class 44: Health care services, namely, health assessment services, treatment of patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; Gynecological services; Rental of medical apparatus and equipment; Cosmetic and plastic surgery; Beauty salon services; Liposuction; medical services, namely, removal of body cellulite |
| 4,750,101[1] |  | June 9, 2015 | Jan. 24, 2014 | Class 10: Physiotherapy apparatus in the nature of apparatus for electrotherapy, laser therapy, ultrasound therapy, magnetotherapy, and shockwave therapy, all for electrical nerve and muscle stimulation, infrared heat, wound healing, pain therapy, and treatment of inflammation; body rehabilitation apparatus for medical purposes; esthetic massage apparatus; |

---

[1] This registration hereinafter referred to as the "BTL Logo."

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | hydrotherapy massage apparatus; medical and veterinary diagnostic apparatus and instruments, namely, electrocardiographs, heart monitors, spirometers, and blood pressure monitors; Medical devices for nonsurgical cosmetic treatments; medical devices for body toning and body shaping, tightening of skin, treatment of skin laxity, wrinkles, rhytides, and cellulite, and fat removal; lymphatic drainage equipment, namely, massage apparatus and lasers for medical use |

45.    BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct copies of the BTL Trademark registrations, obtained from the Trademark Status Document Retrieval ("**TSDR**") database of the USPTO, are attached to this Complaint as **Exhibit G**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

46.    The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body- and facial-contouring devices like the EMSCULPT®, EMSELLA®, and EMFACE®, and associated treatment services. The BTL Trademarks signify to purchasers that the body- and face-contouring devices come from BTL, and the body- and face-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's

innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promoting, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

### C.    Defendants' Unlawful Conduct

47.    On information and belief, Defendants have since at least April 30, 2025, advertised body-contouring devices, such as the "EMSculpting" and "EMS Chair," and since at least February 8, 2025, advertised face-contouring devices, such as "EMS Non-Surgical Lift Face." (collectively, the "**Accused Devices**"). *See*, https://www.berejuved.com/emsculpting, https://www.berejuved.com/urinaryincontinencetreatment, https://www.berejuved.com/, and https://www.instagram.com/p/DF1GVY5RdGN/. On information and belief, Defendants also provide body sculpting services by booking online appointments.

48.    On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights.

49.    On information and belief, the Accused Devices implement the same or substantially the same technology as the Asserted Patents.

50.    On information and belief, the Accused Devices include or perform each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into the United States the Accused Devices, Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

51.    On information and belief, Defendants have been aware of the Asserted Patents since at least April 30, 2025, when attorneys for BTL informed Defendants, via email to info@berejuved.com (i.e., the email listed on BeRejuved's website) and FedEx to BeRejuved's principal place of business, of their infringement of the Asserted Patents and BTL Trademarks. FedEx provided proof of delivery on May 1, 2025, at Defendants' principal place of business. On May 16, 2025, attorneys for BTL followed up with Defendants via email. To this day, Defendants have not responded to any of BTL's letters or emails. Additionally, BTL's "Patent Labeling" webpage (https://www.btlnet.com/patents) also lists the Asserted Patents and identifies them as covering the EMSCULPT®, EMSELLA®, and EMFACE® devices.

52.    On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Accused Devices by their customers in manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the Asserted Patents.

53.    Defendants have used and continue to use the same or confusingly similar variations of the BTL Trademarks in their informational and promotional materials for their face-contouring services and sale of Accused Devices.

54.    Specifically, the images below are representative of Defendants' infringing conduct:

(https://web.archive.org/web/20240620220201/https://www.berejuved.com/emsculpting;

accessed June 6, 2025)



(https://web.archive.org/web/20240620222832/https://www.berejuved.com/urinaryincontinencet

reatment; accessed June 6, 2025)



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed June 6, 2025)

55.     On information and belief, Dr. Sodol and Dr. Zak are the moving, conscious, and active forces behind BeRejuved's infringing conduct. For example, on information and belief, Dr. Sodol and Dr. Zak are the owners and/or directors of BeRejuved. For example, BeRejuved's Instagram Page describes Dr. Zak and Dr. Sodol as "Co-Founder[s]." *See* https://www.instagram.com/berejuved_/p/DJ_4ZDnC-Lx/;

https://www.instagram.com/p/DJ7NxZQC7co/.

56.     Dr. Sodol and Dr. Zak, as the owners and directors of BeRejuved, are and have been the individuals possessing decision-making authority over the content of BeRejuved's technical, information, and promotional materials for the Accused Devices.

57.     On information and belief, Dr. Sodol and Dr. Zak have and continue to willfully and maliciously serve as the moving, conscious, and active forces behind BeRejuved's infringing conduct—not least because Dr. Sodol and Dr. Zak have had knowledge of BTL's intellectual

property at least since April 30, 2025, when counsel for BTL informed Defendants via email and FedEx of their potential infringement of BTL's intellectual property.

58.     Defendants' use of HIFEM®, EMSCULPTING®, and EMS® is without BTL's authorization.

59.     On information and belief, the Accused Device/procedure "EMSculpting" is not an authentic BTL device/procedure. On information and belief, Defendants' Accused Device "EMSculpting" uses time-varying magnetic fields that are applied to a patient's skin and held there using a flexible belt attached to an applicator that includes a magnetic field generating coil. On information and belief, the magnetic field generating coil generates a time-varying magnetic field and the device applies a magnetic flux of 50 T cm$^2$ to 1,500 T cm$^2$ and causes muscle contractions.

60.     On information and belief, the Accused Device "EMS Chair" is not an authentic BTL device. On information and belief, Defendants' Accused Device "EMS Chair" uses time-varying magnetic fields for treatment of a patient. On information and belief, the device includes a connection to an energy source, a switch, a coil, an energy storage device, a casing, and at least one blower. On information and belief, at least one blower is mounted around the circumference of the coil so that air is forced through a flow channel defined between the coil and the interior surface of the casing. This arrangement allows fluid (e.g., air) to pass over both the upper and lower faces of the coil, thereby cooling the coil while the magnetic field is being pulsed.

61.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" is not an authentic BTL device. On information and belief, Defendants' Accused Device "EMS Non-Surgical Lift Face" includes a flexible pad comprising an electrode that is configured to be attached to a patient's body part—such as the face, neck, or submentum—during treatment. On information and belief, the electrode is configured to apply radiofrequency energy to the patient's skin,

resulting in radiofrequency heating of the treatment area. On information and belief, the electrode is further configured to deliver pulsed electric currents with a pulse duration between 0.5 microseconds and 500 milliseconds, causing muscle contractions within the treated body part. On information and belief, the device includes a control unit comprising a central processing unit that regulates both the radiofrequency energy and the pulsed electric current during use.

62. On information and belief, Defendants' Accused Device "EMS Non-Surgical Lift Face" incorporates a treatment pad that works in concert with two separate power sources—a first generator that emits electromagnetic energy and a second generator that supplies electric current— both governed by an integrated control unit. On information and belief, the pad spans roughly 0.1 cm² to 150 cm² and is formed from a flexible substrate whose underside is oriented toward the patient during use. A conductive lead traverses the pad and couples an underside-mounted electrode, having a surface area of about 1 cm² to 25 cm², to each generator. When the pad is affixed to the targeted body part, the electrode is believed to deliver radiofrequency or other electromagnetic energy that heats the overlying skin while simultaneously channeling electric current deep enough to trigger involuntary muscle contractions in the same region.

63. On information and belief, the Accused Devices are not FDA-cleared.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,636,519

64. BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

65. The '519 Patent is directed towards a magnetic stimulation device for producing a time varying magnetic field for treatment. Exemplary claim 1 of the '519 Patent recites:

A magnetic stimulation device producing a time varying magnetic field for treatment, comprising;

a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a case;

with the blower arranged on a circumference of the coil; and

wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil.

66.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '519 Patent by making, using, offering to sell, selling, or importing the Accused Device "EMS Chair" in the United States.

67.     On information and belief, Defendants have and continue to promote and perform the preamble of claim 1 of the '519 Patent, which recites "[a] magnetic stimulation device producing a time varying magnetic field for treatment, comprising." Advertising and promotional information for the Accused Device "EMS Chair" indicates that the body-contouring services performed by the Accused Device "EMS Chair" tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshots taken from Defendants' Website, the "EMS Chair" device "delivers high-intensity electromagnetic waves which stimulate pelvic floor muscles, improve muscle tone, and increase blood flow."



## How does the EMS Incontinence Chair Treatment work?

The machine delivers high-intensity electromagnetic waves which stimulate pelvic floor muscles, improve muscle tone, and increase blood flow. This non-surgical, non-invasive treatment is 100% safe and painless, has no side effects, and requires no downtime! All you feel during the procedure is vibration and pelvic muscle contractions. You can return to your regular activity or have sex right away.

The procedure takes 30 minutes. The full round consists of 6 sessions one to two times a week. This advanced treatment is a great alternative to taking medications or undergoing unnecessary surgery.

This treatment utilizes state-of-the-art technology to revitalize and tighten your bladder region to help with urinary incontinence. In addition, this procedure can help increase your sexual drive!

(https://www.berejuved.com/urinaryincontinencetreatment; accessed June 6, 2025)

68.     On information and belief, the Accused Device "EMS Chair" includes the claimed element "a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a casing." As can be seen in the following screenshot taken from Defendants' website, the device features a power cord on the back side, which is presumed to be connected to a power source as evidenced by the active lighting on the "EMS Chair" handles. Additionally, the device features a casing—the exterior of the chair which houses the internal mechanisms—and the holes around the circumference of the chair, beneath the edge of the seat, indicate the presence of at least one blower as the holes allow the air to circulate. On information and belief, a reasonable opportunity for further investigation or discovery will show that the device also features a coil, an energy storage device, and a switch.



(https://www.berejuved.com/urinaryincontinencetreatment; accessed June 6, 2025)

69.     On information and belief, the Accused Device "EMS Chair" includes the claimed element "with the blower arranged on a circumference of the coil." On information and belief, a reasonable opportunity for further investigation or discovery will show that the device includes a blower arranged on a circumference of a coil.

70.     On information and belief, the Accused Device "EMS Chair" includes the claimed element "wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil." As described above, the holes around the circumference of the device indicate that a fluid (e.g., air) is being used to cool coils, which on information and belief, reside within the casing. On information and belief, a reasonable opportunity for further investigation or discovery will show that the device includes a coil(s) arranged in a manner that fluid (e.g., air) can flow in-between the coil(s), which are cooled by the fluid flow over at least the upper and lower sides of the coil(s).



(https://www.berejuved.com/urinaryincontinencetreatment; accessed June 6, 2025)

71.    Defendants' direct infringement of the '519 Patent has been, and continues to be, willful. Defendants have been aware of the '519 Patent before the filing of this Complaint and have infringed the '519 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

72.    Defendants' direct infringement of the '519 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

73.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '519 Patent.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

74.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

75.    The '634 Patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary claim 1 of the '634 Patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region, wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

76. Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing the Accused Device/procedure "EMSculpting" in the United States.

77. Defendants have and continue to promote and perform the preamble of claim 1 of the '634 Patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields." Advertising and promotional information for the Accused Device/procedure "EMSculpting" indicates that the body-contouring services performed by the Accused Device/procedure "EMSculpting" tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshot taken from Defendants' website, the "EMSculpting" device/procedure offers a "non-invasive procedure that uses High Intensity Focused Electromagnetic energy (HIFEM) to strengthen, firm, and tone muscle." Furthermore, "HIFEM induces muscle contractions at the rate of approximately 20,000 contractions per session." On

information and belief, this language indicates that the device/procedure tones a patient's muscles using time-varying magnetic fields. On information and belief, a reasonable opportunity for further investigation or discovery will show that the device/procedure's magnetic fields are time-varying.



## EMSculpting

Emsculpting is an non-invasive procedure that uses High Intensity Focused Electromagnetic energy (HIFEM) to strengthen, firm, and tone muscle. HIFEM induces muscle contractions at the rate of approximately 20,000 contractions per session. It causes the growth of the muscle and production of muscle cells. It speeds up the body metabolism and burns the excess fat.

(https://www.berejuved.com/emsculpting; accessed June 6, 2025)

Defendants' website further describes the benefits of the device/procedure as "[b]uild[ing] and sculpt[ing] muscles," "[i]ncrease[ing] muscle mass," and "[h]elp[ing] to burn excess body fat." Additionally, Defendants' homepage describes the device/procedure as "[h]elp[ing] build muscle, burn fat, and enhanc[ing] body tone in areas like the abdomen, buttocks, arms, and thighs."

☑ **Benefits**

- Builds and sculpts the muscles
- Promotes production of muscle cells
- Improves overall muscle definition
- Increases muscle mass
- Helps to burn excess body fat
- No downtime

**Build the muscles of your dream**

Book now

(https://www.berejuved.com/emsculpting; accessed June 6, 2025)

32



(https://www.berejuved.com/; accessed June 6, 2025)

78.    Defendants have and continue to promote and perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock." For example, Defendants' website shows the Accused Device "EMSculpting" includes at least one applicator, which on information and belief, comprises a magnetic field generating coil. As shown on Defendants' website, Defendants place these applicators on the skin of a patient's abdomen or buttocks or over clothing covering these body regions. Defendants' advertising and promotional materials depict the device's applicators attached to the skin of patients at various body regions including the abdomen or buttock. On information and belief, a reasonable opportunity for further investigation or discovery will show that the device's applicators contain magnetic field generating coils.



(https://www.berejuved.com/emsculpting; accessed June 6, 2025)



(https://www.berejuved.com/; accessed June 6, 2025)

79.    Defendants have and continue to promote and perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." As shown on Defendants' website, the device's applicators are attached to the skin of patients using an adjustable flexible belt at various body regions including "abdomen, buttock, arms, and thighs."



([https://www.berejuved.com/emsculpting](https://www.berejuved.com/emsculpting); accessed June 6, 2025)



([https://www.berejuved.com/](https://www.berejuved.com/); accessed June 6, 2025)

80.    Defendants have and continue to promote and perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of the Accused Device "EMSculpting" includes providing a power supply which transmits energy to the applicators, via an energy source and energy storage device, which in turn generates time-varying magnetic fields. On information and belief, the Accused Device "EMSculpting" includes a power supply which transmit energy to the applicators, which in turn generate time-varying magnetic fields.

81.    Defendants have and continue to promote and perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device "EMSculpting's" magnetic field generating coils are configured to generate a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$.

82.    Defendants have and continue to promote and perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." For example, advertising and promotional materials for the Accused Device "EMSculpting" promote and advertise the device's ability to "induce[] muscle contractions at the rate of approximately 20,000 contractions per session." These contractions cause "the growth of the muscle and production of muscle cells."

**EMSculpting**

Emsculpting is an non-invasive procedure that uses High Intensity Focused Electromagnetic energy (HIFEM) to strengthen, firm, and tone muscle. HIFEM induces muscle contractions at the rate of approximately 20,000 contractions per session. It causes the growth of the muscle and production of muscle cells. It speeds up the body metabolism and burns the excess fat.

(https://www.berejuved.com/emsculpting; accessed June 6, 2025)

83.     Defendants' direct infringement of the '634 Patent has been, and continues to be, willful. Defendants have been aware of the '634 Patent before the filing of this Complaint and have infringed the '634 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

84.     Defendants' direct infringement of the '634 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

85.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 Patent.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,679,255**

86.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

87.     The '255 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 16 of the '255 Patent recites:

A device for treating a patient by radiofrequency energy and a pulsed electric current, the device comprising:

a flexible pad configured to be attached to a body part of a patient, the flexible pad comprising:

a flexible substrate comprising an underside configured to face the body part during a treatment;

an electrode coupled to the underside of the flexible substrate; and

an adhesive coupled to the underside of the flexible substrate and to the electrode,

wherein the electrode is configured to be in contact with the body part via the adhesive;

wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part, and

wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part; and

a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment,

wherein the body part comprises one of a face, a neck, or a submentum.

88.    The Accused Device "EMS Non-Surgical Lift Face" includes or performs each and every limitation of at least claim 16 of the '255 Patent, either literally or under the doctrine of equivalents.

89.     Defendants have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 16 of the '255 Patent by making, using, offering to sell, selling, or importing the Accused Device "EMS Non-Surgical Lift Face" in the United States.

90.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the preamble of claim 16 of the '255 Patent, which recites "[a] device for treating a patient by radiofrequency energy and a pulsed electric current." Defendants' Instagram page describes the device as "treatment" that "[r]educes wrinkles," "[i]ncreases muscle tone and lifting power," "[i]mproves facial appearance," and "[i]ncreases skin evenness." On information and belief, the device accomplishes this treatment via radiofrequency energy and a pulsed electric current. For example, a distributor of the "EMRF Face Machine" (i.e., the "EMS Non-Surgical Lift Face" used by Defendants) describes the device as "a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces (sic) continuous contraction (sic) and pulling of facial muscles." https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/.



39



([https://www.instagram.com/p/DF1GVY5RdGN/](https://www.instagram.com/p/DF1GVY5RdGN/); accessed June 6, 2025)



(https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/; accessed June 6, 2025).

91.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a flexible pad configured to be attached to a body part of a patient." For example, the following screenshots taken from Defendants' Instagram page (https://www.instagram.com/p/DF1GVY5RdGN/) shows the device's pads flexing to the contours of the patient's face.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed June 6, 2025)

92.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a flexible substrate comprising an underside configured to face the body part during a treatment." As seen from Defendants' Instagram post, the pads are flexing to the contours of the patient's face and include an underside facing the patient's face during the treatment.



([https://www.instagram.com/p/DF1GVY5RdGN/](https://www.instagram.com/p/DF1GVY5RdGN/); accessed June 6, 2025)

93.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "an electrode coupled to the underside of the flexible substrate." On information and belief, the device uses pulsed electric current and flexible substrates.[2] On information and belief, the pulsed electric current requires an electrode to be produced. For example, Defendants' Instagram post depicts the connections to the electrodes within the device's flexible pads. Additionally, Defendants' Instagram post shows the patient's face contracting as a result of the pulsed electric current.

---

[2] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Device "EMS Non-Surgical Lift Face" includes an electrode coupled to the underside of the flexible substrate.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

94.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face"
includes the claimed element "an adhesive coupled to the underside of the flexible substrate and
to the electrode." As shown in Defendants' Instagram posts, the flexible pads are adhered to the

patient's face with, on information and belief, an adhesive.[3] On information and belief, the Accused Devices include an adhesive coupled to the underside of the flexible substrate. For example, this is demonstrated by the adhesive nature of the pads, which can be seen as adhering to the patient's skin during treatment.



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

95.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "wherein the electrode is configured to be in contact with the body part via the adhesive." On information and belief, the device uses pulsed electric current, and that pulsed electric current emanates from electrodes included in the flexible pads. *See* https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-

---

[3] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Device "EMS Non-Surgical Lift Face" includes an electrode coupled to the underside of the flexible substrate.

removal/ ("EMRF uses electromagnetic waves to stimulate muscle contractions. This technique is sometimes used for muscle toning and strengthening, including facial muscles. By inducing involuntary muscle contractions, the treatment can potentially lead to improved muscle tone and a lifted appearance in the treated area."). As shown in Defendants' Instagram posts, the electrode is located on the underside of the flexible substrate, which is in contact with the patient's body in order to operate, which results in contractions of the patient's face.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

96.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part" because the device treats patients using radiofrequency energy. See e.g., https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/ (the procedure "uses radiofrequency energy to heat the deeper layers of the skin").

**EMRF Face Machine Brief Introduction**

EMRF Face is a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces continuous contraction and pulling of facial muscles. It improves muscle strength and resting tension to restore and enhance the support of facial tissues. And at the same time increases collagen, elastin and connective tissue remodeling. Thereby improving facial musculature aging problems caused by loss. Reveal a younger, stronger, healthier, more toned, more energized, renewed version of yourself inside and out. EMRF- a specially designed for facial muscle care patch, using high intensity facial electromagnetic stimulation and synchronous radio frequency technology. At the same time for muscle and skin to tighten, and regulate face. It helps restore facial contour, treatment painless noninvasive, no recovery period. Without anesthesia, no discomfort in treatment, after treatment without recovery, just do it and go, and live as usual.

**Working Priciple of EMRF Machine**

**High-intensity electromagnetic skin stimulation:** EMRF uses electromagnetic waves to stimulate muscle contractions. This technique is sometimes used for muscle toning and strengthening, including facial muscles. By inducing involuntary muscle contractions, the treatment can potentially lead to improved muscle tone and a lifted appearance in the treated area.
**Monopole RF:** It is a non-invasive procedure that uses radiofrequency energy to heat the deeper layers of the skin. This heat stimulates collagen production and tightens existing collagen fibers, resulting in improved skin texture and reduced sagging. The basic principle is that controlled heating of the skin's deeper layers triggers a wound-healing response, leading to collagen remodeling and skin tightening.

(https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/; accessed May 12, 2025)

97.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part." On information and belief, the device treats patients using pulsed electric current. On information and belief, these pulsed electric currents produced by the device causes muscle contractions. For example, a video posted on Defendants' Instagram Page (https://www.instagram.com/p/DF1GVY5RdGN/) shows a patients' facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Device "EMS Non-Surgical Lift Face."



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

Additionally, on information and belief, the device treats patients using "high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES)" which results in muscle contractions. See e.g., https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/ ("EMRF uses electromagnetic waves to stimulate muscle contractions").

**EMRF Face Machine Brief Introduction**

EMRF Face is a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces involuntary contraction and pulling of facial muscles. It improves muscle strength and resting tension to restore and enhance the support of facial tissues. And at the same time increases collagen, elastin and connective tissue remodeling. Thereby improving facial musculature aging problems caused by loss. Reveal a younger, stronger, healthier, more toned, more energized, renewed version of yourself inside and out. EMRF- a specially designed for facial muscle care patch, using high intensity facial electromagnetic stimulation and synchronous radio frequency technology. At the same time for muscle and skin to tighten, and regulate face. It helps restore facial contour, treatment painless noninvasive, no recovery period. Without anesthesia, no discomfort in treatment, after treatment without recovery, just do it and go, and live as usual.

**Working Principle of EMRF Machine**

**High-intensity electromagnetic skin stimulation:** EMRF uses electromagnetic waves to stimulate muscle contractions. This technique is sometimes used for muscle toning and strengthening, including facial muscles. By inducing involuntary muscle contractions, the treatment can potentially lead to improved muscle tone and a lifted appearance in the treated area.
**Monopole RF:** It is a non-invasive procedure that uses radiofrequency energy to heat the deeper layers of the skin. This heat stimulates collagen production and tightens existing collagen fibers, resulting in improved skin texture and reduced sagging. The basic principle is that controlled heating of the skin's deeper layers triggers a wound-healing response, leading to collagen remodeling and skin tightening.

(https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/; accessed May 12, 2025)

48

98.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment." In the video posted on Defendants' Instagram page (https://www.instagram.com/p/DF1GVY5RdGN/), the device is shown as operated by a control unit. This video represents that an operator can select and modify the device's radiofrequency energy and pulsed electric current.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

99.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "wherein the body part comprises one of a face, a neck, or a submentum." As shown by Defendants' social media post, the Accused Devices are intended to treat various areas of a patient's face, neck, and submentum. For example, the below screenshot from Defendants' Instagram Page shows the device's flexible pads attached to a patient's face and submentum.



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

100.    Defendants' direct infringement of the '255 Patent has been, and continues to be, willful. Defendants have been aware of the '255 Patent before the filing of this Complaint and have infringed the '255 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

101.    Defendants' direct infringement of the '255 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

102.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '255 Patent.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,878,167**

103.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

104.    The '167 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 1 of the '167 Patent recites:

A device for a treatment of a patient, comprising:

a first generator configured to generate an electromagnetic energy;

a second generator configured to generate an electric current;

a pad having a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$ and configured to be attached to a body part of the patient, the pad comprising:

a substrate comprising an underside configured to face the patient during the treatment;

a conductive lead; and

an electrode having a surface area in a range of 1 cm2 to 25 cm2, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead; and

a control unit configured to control the first generator and the second generator,

wherein the electrode is configured to be coupled with the body part during the treatment, and

wherein the electrode is configured to provide the electromagnetic energy to the body part, thereby causing heating of skin of the body part, and is configured to provide the electric current to the body part, thereby causing contractions of a muscle within the body part.

105.    The Accused Device "EMS Non-Surgical Lift Face" includes or performs each and every limitation of at least claim 1 of the '167 Patent, either literally or under the doctrine of equivalents.

106.    Defendants have and continue to directly infringe, literally or under the doctrine of

equivalents, at least claim 1 of the '167 Patent by making, using, offering to sell, selling, or importing the Accused Device "EMS Non-Surgical Lift Face" in the United States.

107.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the preamble of claim 1 of the '167 Patent, which recites "[a] device for a treatment of a patient." Defendants' Instagram page describes the device's pads attached to a patient's face and describes the device as a "treatment" that "reduces wrinkles," "increases muscle tone and lifting power," "improves facial appearance," and "increases skin evenness." On information and belief, the pads accomplish this treatment via radiofrequency energy and a pulsed electric current. For example, a distributor of the "EMRF Face Machine" (i.e., the "EMS Non-Surgical Lift Face" used by Defendants) describes the device as "a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces (sic) continuous contraction (sic) and pulling of facial muscles." https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed June 6, 2025)



(https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/; accessed June 6, 2025)

108.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a first generator configured to generate an electromagnetic energy." On information and belief, the device includes a "first generator" which generates electromagnetic energy because an EMRF Face Machine such as the Accused Device is "a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces (sic) continuous contraction (sic) and pulling of facial muscles."

https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/. Here, the Mono-polar Radio Frequency is created by the first generator.

EMRF Face Machine Brief Introduction

EMRF Face is a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces continuous contraction and pulling of facial muscles. It improves muscle strength and resting tension to restore and enhance the support of facial tissues. And at the same time increases collagen, elastin and connective tissue remodeling. Thereby improving facial musculature aging problems caused by loss. Reveal a younger, stronger, healthier, more toned, more energized, renewed version of yourself inside and out. EMRF- a specially designed for facial muscle care patch, using high intensity facial electromagnetic stimulation and synchronous radio frequency technology. At the same time for muscle and skin to tighten, and regulate face. It helps restore facial contour, treatment painless noninvasive, no recovery period. Without anesthesia, no discomfort in treatment, after  treatment without recovery, just do it and go, and live as usual.

(https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/; accessed June 19, 2025)

109.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a second generator configured to generate an electric current." On information and belief, the device includes a "second generator" which treats patients using pulsed electric current because an EMRF Face Machine such as the Accused Deviceis "a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces (sic) continuous contraction (sic) and pulling of facial muscles." See e.g., https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/. Here, the high-intensity facial electromagnetic stimulation is created by the second generator.

EMRF Face Machine Brief Introduction

EMRF Face is a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces continuous contraction and pulling of facial muscles. It improves muscle strength and resting tension to restore and enhance the support of facial tissues. And at the same time increases collagen, elastin and connective tissue remodeling. Thereby improving facial musculature aging problems caused by loss. Reveal a younger, stronger, healthier, more toned, more energized, renewed version of yourself inside and out. EMRF- a specially designed for facial muscle care patch, using high intensity facial electromagnetic stimulation and synchronous radio frequency technology. At the same time for muscle and skin to tighten, and regulate face. It helps restore facial contour, treatment painless noninvasive, no recovery period. Without anesthesia, no discomfort in treatment, after  treatment without recovery, just do it and go, and live as usual.

See e.g., (https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-

wrinkle-removal/; accessed June 19, 2025)

110.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a pad having a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$ and configured to be attached to a body part of the patient." A reasonable opportunity for further investigation and discovery will show the pads have "a surface area in a range of 0.1 cm$^2$ to 150 cm$^2$." As can be seen in Defendants' Instagram video, the device can be seen as configured to attach to a patient's body.





([https://www.instagram.com/p/DF1GVY5RdGN/](https://www.instagram.com/p/DF1GVY5RdGN/); accessed on June 6, 2025)

111.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "the pad comprising: a substrate comprising an underside configured to face the patient during treatment." For example, the following screenshots taken from Defendants' Instagram page show the pads featuring an underside and a top side. When attached to the patient's face, the underside is in contact with the patient, and the top side of the pad is exposed. The video further shows the pads as flexible, as shown by how the pads match the contour of the patient's face.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

112.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a conductive lead." As may be seen in the following screenshots,

the device includes a conductive lead that couples the device to the electrode(s) in the pad.



([https://www.instagram.com/p/DF1GVY5RdGN/](https://www.instagram.com/p/DF1GVY5RdGN/); accessed on June 6, 2025)

113.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "an electrode having a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead." For instance, the following screenshots taken from Defendants' Instagram show the device's pads, including an electrode coupled to the underside of the pad, placed on a patient's treatment area. The pads are then coupled to the first and second generator via the conductive lead(s).







(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

As may be seen in Defendants' Instagram video, the patient's face contracts as a result of the current provided by the electrode in contact with the treatment area of the patient's body. On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Device "EMS Non-Surgical Lift Face" includes an electrode located on the underside of the flexible substrate. On information and belief, a reasonable opportunity for further investigation and discovery will show the electrode has a surface area in a range of 1 cm$^2$ to 25 cm$^2$, coupled to the underside of the substrate, and coupled to the first generator and second generator via the conductive lead.



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

114.     On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "a control unit configured to control the first generator and the second generator." In a video posted on Defendants' Instagram page, the device's screen is shown, which features options for controlling the radiofrequency energy and electric current.





(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

115.    On information and belief, the Accused Device "EMS Non-Surgical Lift Face" includes the claimed element "wherein the electrode is configured to be coupled with the body part during treatment." For instance, the following screenshots taken from Defendants' Instagram show the device's pads, including an electrode (on information and belief) coupled to the underside of the pad, placed on a patient's treatment area.





([https://www.instagram.com/p/DF1GVY5RdGN/](https://www.instagram.com/p/DF1GVY5RdGN/); accessed on June 6, 2025)

As may be seen in Defendants' Instagram video, the patient's face contracts as a result of the current provided by the electrode in contact with the treatment area of the patient's body. On information and belief, a reasonable opportunity for further investigation and discovery will show that the Accused Device "EMS Non-Surgical Lift Face" includes an electrode located on the underside of the flexible substrate.



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

116.    On information and belief, the Accused Device "EMS non-Surgical Lift Face" includes the claimed element "wherein the electrode is configured to provide the electromagnetic energy to the body part, thereby causing heating of skin of the body part, and is configured to provide the electric current to the body part, thereby causing contractions of a muscle within the body part" Because an EMRF Face Machine such as the Accused Device is "a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces (sic) continuous contraction (sic) and pulling of facial muscles." See e.g., https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/.

**EMRF Face Machine Brief Introduction**

EMRF Face is a non-invasive facial anti-aging care machine, which uses high-intensity facial electromagnetic stimulation (high-intensity facial electromagnetic stimulation, HIFES) + Mono-polar Radio Frequency (RF) technology induces continuous contraction and pulling of facial muscles. It improves muscle strength and resting tension to restore and enhance the support of facial tissues. And at the same time increases collagen, elastin and connective tissue remodeling. Thereby improving facial musculature aging problems caused by loss. Reveal a younger, stronger, healthier, more toned, more energized, renewed version of yourself inside and out. EMRF- a specially designed for facial muscle care patch, using high intensity facial electromagnetic stimulation and synchronous radio frequency technology. At the same time for muscle and skin to tighten, and regulate face. It helps restore facial contour, treatment painless noninvasive, no recovery period. Without anesthesia, no discomfort in treatment, after treatment without recovery, just do it and go, and live as usual.

(https://ytingbeauty.com/products/emrf-face-electromagnetic-anti-aging-skin-lifting-wrinkle-removal/; accessed June 19, 2025)

On information and belief, the device treats patients using radiofrequency energy. This radiofrequency produces "heat," which "stimulates collagen production and tightens existing collagen fibers." Additionally, on information and belief, the device treats patients using high-intensity electromagnetic skin stimulation. These pulsed electric currents produced by the device "stimulate muscle contractions." For example, a video posted on the Defendants' Instagram Page (https://www.instagram.com/p/DF1GVY5RdGN/) shows patients' facial muscles contracting upon being subjected to the pulsed electric currents of the Accused Devices.



(https://www.instagram.com/p/DF1GVY5RdGN/; accessed on June 6, 2025)

117.    Defendants' direct infringement of the '167 Patent has been, and continues to be, willful. Defendants have been aware of the '167 Patent before the filing of this Complaint and have infringed the '167 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

118.    Defendants' direct infringement of the '167 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

119.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '167 Patent.

## COUNT V: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

120.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

121.    BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

122.    Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and confusingly similar variations thereof in connection with the advertising, promotion, sale, and offer for sale of the Accused Devices.

123.    On information and belief, Defendants' unauthorized use of the HIFEM® mark to advertise and promote body-contouring services using the Accused Devices has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Devices and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Devices and face-contouring services.

124.    On information and belief, Defendants' unauthorized use of the EMSCULPTING, and EMS marks—which are confusingly similar variations of BTL's EMSCULPT®, and EM® federally registered trademarks—to advertise and promote the Accused Devices has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Devices and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Devices and body-contouring services.

125.    Defendants have had actual knowledge of BTL's rights in the BTL Trademarks since April 30, 2025 when BTL sent them an email/letter informing them of infringement of BTL Trademarks. Further, under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EMSCULPT®, EM®, HIFEM®, and BTL Logo trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL. https://www.trademarkia.com/owners/btl-industries-inc.

126.    The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

127.    Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of their infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

128.    BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

**COUNT VI: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125**

129.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

130.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell the Accused Devices has and is likely to confuse, mislead, or deceive as to the origin and quality of these body- and face-contouring services and the Accused Devices, their association with BTL and BTL's EMSCULPT®, EMSELLA®, and EMFACE® devices, and the sponsorship or approval by BTL of the Accused Devices.

131.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell the Accused Devices misrepresents the nature, characteristics, qualities, and geographic origin of the Accused Devices.

132.    Defendants' actions constitute a willful violation of 15 U.S.C. § 1125.

133.    Defendants' actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body- and face-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

134.    BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

## COUNT VII: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

135.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

136.    Defendants use marks identical to or substantially indistinguishable from BTL's HIFEM®, EMSCULPT®, and EM® federally registered trademarks.

137.    BTL has not authorized Defendants' use of this BTL Trademark to advertise and promote body-contouring services using the Accused Devices.

138.    Defendants' unauthorized use of this BTL Trademark is likely to (a) cause the public and consumers to believe that Defendants' body-contouring services using the Accused Devices are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefiting from the reputation of BTL and this BTL Trademark, and the substantial goodwill represented thereby.

139.    Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL Trademark.

## COUNT VIII: VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349 FOR UNFAIR TRADE PRACTICES

140.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

141.    The acts of Defendants complained of herein constitute deceptive and unfair trade practices in violation of New York General Business Law ("**NY GBL**") § 349.

142.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and use of the Accused Devices constitutes deceptive and unfair trade practices in violation of NY GBL § 349.

143.    Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public in New York and to capitalize on the goodwill developed by BTL.

144.    Defendants' use of the BTL Trademarks in connection with the marketing and sale of the Accused Devices constitutes unfair competition that is likely to cause confusion, mistake,

and deception among consumers as to the affiliation, connection, or association with BTL or the origin, sponsorship, or approval of the Accused Devices by BTL. Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill created by BTL in its EMSCULPT®, HIFEM®, and EM® trademarks.

145.    Despite their actual and constructive knowledge of BTL's use and rights in the BTL Trademarks, Defendants have continued to use the BTL Trademarks (and variations thereof) in association with the promotion, advertising, marketing, and/or sale of the Accused Devices without BTL's authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL in the BTL Trademarks.

146.    BTL has sustained injury, damage, and loss in New York based on Defendants' actions. Defendants' actions directly or indirectly affect New York.

147.    Defendants are liable for a violation of NY GBL § 349.

148.    As a direct result of Defendants' deceptive acts and practices, BTL is entitled to recover treble damages and attorneys' fees and costs pursuant to NY GBL § 349(h).

## COUNT IX: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

149.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

150.    This claim arises under the common law of the State of New York.

151.    Defendants have engaged in unfair competition through their reliance and exploitation of consumer mistake and confusion, and their deliberate efforts to exploit the goodwill represented by the BTL Trademarks in connection with the marketing and sale of the Accused Device.

152.    Defendants' aforementioned acts constitute trademark infringement and unfair competition in violation of New York common law.

153.    As a proximate result of Defendants' actions, BTL has suffered and will continue to suffer damages.

154.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

155.    By reason of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Defendants' profits attributable to their infringement, which are presently indeterminate, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.    A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)–(c);

B.    An award of damages not less than a reasonable royalty for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.    A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

D.    A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.    An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.    A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.      A judgment that Defendants' use of the "HIFEM" mark, as alleged in this Complaint, infringes BTL's HIFEM® trademark;

H.      A judgment that Defendants' use of the "EMSCULPTING" mark, as alleged in this Complaint, infringes BTL's EMSCULPT® trademark;

I.      A judgment that Defendants' use of the "EMS" mark, as alleged in this Complaint, infringes BTL's EM® trademark;

J.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

K.      A judgment that Defendants have violated the New York General Business Law § 349;

L.      A judgment that Defendants have violated New York common law;

M.      An award of damages for Defendants' infringement of the BTL Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

N.      Alternatively, an award of statutory damages for Defendant's infringement of BTL's HIFEM® , EMSCULPT®, and EM® trademarks in an amount of $200,000 per mark. That amount to be heightened to $2,000,000 in accordance with 15 U.S.C. § 1117(c)(2) for Defendant's willfulness.

O.      A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

P.      A judgment that Defendants' conduct in violating the BTL Trademarks is willful and malicious;

Q.      An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

R.      An award of any and all of Defendants' profits arising from the foregoing acts;

S.      An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

T.      Permanent injunctive relief enjoining Defendants from:

    i.      using the BTL Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

    ii.     passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

    iii.    committing any acts calculated to cause consumers to believe that Defendants' goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

    iv.     further infringing the BTL Trademarks and damaging BTL's goodwill.

U.      An award of BTL's costs and expenses in this action; and

V.      For such other relief as the Court may deem just and proper.

**<u>JURY DEMAND</u>**

BTL hereby demands a trial by jury on all issues so triable.

Dated: August 21, 2025                       Respectfully submitted,

/s/ *Padmaja Chinta*
Padmaja Chinta
**Dunnington Bartholow & Miller LLP**
230 Park Avenue, 21st Floor
New York, NY 10169
Telephone: (212) 682-8811
Facsimile: (212) 661-7769
pchinta@dunnington.com

- and -

Seth R. Ogden (*pro hac vice* to be filed)
sro@iplawgroup.com
**Patterson Intellectual Property Law, P.C.**
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221

*Attorneys for Plaintiff BTL Industries, Inc.*